UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ERNEST DEMEL,

> USDS SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 2 - 10 - 11

                              Plaintiff,                                    09 Civ. 5524 (PKC)

              -against-                                          MEMORANDUM
                                                                 AND ORDER

AMERICAN AIRLINES, INC., AMERICAN
AIRLINES BAGGAGE SERVICE,

                              Defendants.
-------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

              Plaintiff Ernest Demel brings this action *pro se* against American Airlines, Inc.
and American Airlines Baggage Service, seeking to recover the value of a lost backpack
containing, among other things, video footage and Sri Lankan Royal Costumes.  Plaintiff was
required to check the backpack before boarding an American Airlines flight from Miami, Florida
to New York, New York.  Defendants move for summary judgment, pursuant to Rule 56, Fed. R.
Civ. P., dismissing the Complaint on the ground that American Airlines' Conditions of Carriage
precludes any and all liability for the categories of personal property claimed.   For the reasons
set for below, defendants' motion for summary judgment is denied.

BACKGROUND

              The following facts are taken from the parties' Local Civil Rule 56.1 Statements
and Counter-Statements and exhibits filed by the parties.  In each instance, the statement is
supported by evidence submitted on the motion.  The facts are undisputed, unless otherwise
indicated.

On or about January 25, 2008, plaintiff, Ernest Demel, departed from Miami on an "around the world" cruise, stopping at ports such as Puerto Rico, Brazil, South Africa, India, Malaysia, Vietnam, China, Japan, Hawaii and Costa Rica.  (Def. 56.1 ¶ 1; Pl. 56.1 Resp. ¶ 1.) During his travels, plaintiff collected video footage for three work-related projects:  "Royal Costumes for the Last King of Sri Lanka," "Motor Traffic Accidents Around the World," and "British's [sic] Treatment of Political Prisoners."  (Def. 56.1 ¶ 2; Pl. 56.1 Resp. ¶ 2.)  Plaintiff also collected video footage of his personal travel experiences.  (Id.)  Additionally, during his trip, plaintiff purchased "custom tailored Royal Costumes" for use in the documentary film, "Royal Costumes for the Last King of Sri Lanka."  (Def. 56.1 ¶ 3; Pl. 56.1 Resp. ¶ 3.)

On May 9, 2008, upon completion of his trip, the plaintiff went to Miami International Airport in Miami to board American Airlines flight AA 882 to New York.  (Def. 56.1 ¶ 4; Pl. 56.1 Resp. ¶ 4; Compl. § III-A, B, C.)  Before proceeding to the gate to board his flight, plaintiff checked three pieces of baggage and received his boarding pass.  (Def. 56.1 ¶ 4; Pl. 56.1 Resp. ¶ 4; Compl. § III-C.)  While plaintiff was waiting at the gate to board his flight, he was approached by an American Airlines agent who advised him that he would have to check his carry-on backpack.  (Id.)  The backpack contained the DVD's and tapes of plaintiff's work-related and personal travel footage and the costumes for his documentary film.  (Def. 56.1 ¶ 4; Pl. 56.1 Resp. ¶ 4.)

According to plaintiff, the agent did not give him a satisfactory explanation for needing to check the backpack, other than saying "cheeks [sic] the bag and hit the gate."  (Pl. 56.1 Resp. ¶ 4; Demel Aff. p.1.)  Plaintiff claims that his backpack was within the dimension requirements for carry-on baggage as set forth in American Airlines 2008 Conditions of Carriage.  (Id.)  According to the Conditions of Carriage, "a carry-on bag must fit in an overhead

2

compartment or under the seat and should not exceed 45 linear inches [length + width + height] or weigh more than 40 pounds" and not "appear too large or irregularly shaped." (2008 AA Conditions of Carriage at 5, attached at Def. Reply Br. Ex. 1.) The "Baggage and Content Description" form, completed by plaintiff and submitted to American Airlines, indicates that plaintiff's backpack measured 42 linear inches (12 x 12 x 18). (Baggage and Content Description Form, attached at Compl. Ex. 9.) No evidence as to the weight and general appearance of plaintiff's backpack has been submitted.

   Plaintiff returned to the American Airlines ticket counter to check his backpack and paid $80.00 in "additional fees." (Def. 56.1 ¶ 4; Pl. 56.1 Resp. ¶ 4; Passenger Receipt, attached at Compl. Ex. 4.) While at the counter, plaintiff was asked to declare the value of the contents of the backpack that was to be checked and was given the opportunity to purchase excess insurance. (Def. 56.1 ¶ 5.) According to American Airlines 2008 Conditions of Carriage, a passenger has the opportunity to "declare[] a higher value (not to exceed $5000.00 including the $3000.00 standard liability per passenger) and pay[] American a sum of $2.00 per $100.00 (or any portion thereof) of excess value." (2008 AA Conditions of Carriage at 3, attached at Def. Reply Br. Ex. 1.) Plaintiff's receipt indicates that he paid $6.00 for excess insurance and declared the value of his backpack to be $2,000. (Passenger Receipt, attached at Compl. Ex. 4.) Plaintiff claims that the $2,000 figure does not represent the value of the contents of the backpack, but, rather, the amount of "excess value coverage" he purchased when he paid $6.00 to American Airlines. (Pl. 56.1 Resp. ¶ 5.) Plaintiff states that he explained to the AA Agent that the backpack contained "precious belongings," but that the agent "verbally forced [him] to check the backpack, and ask [sic] [him] to hit the gate." (Demel Aff. p.1.)

3

Plaintiff's backpack never arrived in New York. (Def. 56.1 ¶ 9; Compl. § III-C.)

Plaintiff has made several inquiries of American Airlines Central Baggage Service regarding his

backpack. (Correspondences with American Airlines, attached at Compl. Exs. 1-3, 6, 8-10 and

attached at Def. Mot. for Sum. Judg. Ex. E at handwritten p. 1-7.) The backpack has never been

recovered. On or about June 16, 2009, plaintiff filed suit against American Airlines to recover

the value of the contents of the backpack, which he alleges to be $55,300. (Compl. § V.)

American Airlines limits its liability for lost baggage through its carriage contract.

(Def. 56.1 ¶ 7; Pl. 56.1 Resp. ¶ 8.) Relevant portions of American Airlines 2008 Conditions of

Carriage provide as follows,

> **BAGGAGE: Liability**: American's liability for loss, damage or delayed delivery of checked or transferred baggage is limited to the actual value of the baggage or $3000.00, whichever is less, unless the passenger declares a higher value (not to exceed $5000.00 including the $3000.00 standard liability per passenger) and pays American a sum of $2.00 per $100.00 (or any portion thereof) of excess value . . . .

> American does not accept in or as checked baggage any of the following items: . . . photographic, video and optical equipment . . . unique or irreplaceable items or any other similar valuable items. American does not accept these items in or as checked baggage and assumes no responsibility or liability for such items, regardless of whether American knew or should have known of the presence of such items in checked or transferred baggage. If any such items are lost, damaged or delayed, you will not be entitled to any reimbursement under American's standard baggage liability, or under any declared excess valuation. Do not attempt to check these items. Carry them with you in the passenger cabin (subject to carryon baggage limitations) . . . .

> **Carry-on Baggage**: The suitability of carry-on baggage will be determined by American. Each customer will be limited to one carry-on bag and one personal item. A personal item includes a purse, briefcase, laptop or small book bag style backpack . . . .

> A carry-on bag must fit in an overhead compartment or under the seat and should not exceed 45 linear inches [length +

4

width + height] or weigh more than 40 pounds.  Carry-on items which appear too large or irregularly shaped to fit under a seat, in an overhead compartment, or in a closet or luggage rack will not be accepted for passenger cabin stowage . . . .

      At times, additional limits may be placed on carry-on baggage based on the main cabin stowage capacity of specific aircraft.  These limits may be imposed after the boarding process has begun.  As American aircraft vary in size and configuration, certain restrictions may apply regarding the size and amount of carry-on and checked baggage allowed.

(AA 2008 Conditions of Carriage at 3-5, attached at Def. Reply Br. Ex. 1.)

      The baggage check receipts plaintiff received for his three pieces of checked baggage and his backpack and the receipt plaintiff received for his purchase of additional insurance for his backpack state that "for conditions of contract – see passenger ticket and baggage check."  (Passenger Receipts, attached at Compl. Exs. 4-5.)  Neither party produced plaintiff's airline ticket, his boarding pass, an exemplar of a ticket or boarding pass issued to passengers in May 2008, or any other document that may have contained American Airlines' Conditions of Carriage.  In response to this Court's Order of December 30, 2010, American Airlines submitted an affirmation of M. Marrissa Goss, Team Leader for American Airlines, attaching a copy of the back of the "Passenger Ticket and Baggage Check" utilized by American Airlines in May 2008 and a copy of the ticket jacket utilized by American Airlines in May 2008. (Goss Aff'm at ¶¶ 4-5 and Exs. A & B.)

DISCUSSION

    I.    <u>Summary Judgment Standard</u>

      Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, affidavits and other materials show "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Rule

56(a), Fed. R. Civ. P.  It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief.  A fact is material if it "might affect the outcome of the suit under the governing law . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law.  Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

In turn, to defeat a motion for summary judgment, the non-movant must raise a genuine issue of material fact.  In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotations marks and citations omitted); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  In the absence of any disputed material fact, summary judgment is appropriate.  See Rule 56(a), Fed. R. Civ. P.

The pleadings of a *pro se* plaintiff are read "liberally and interpret[ed] . . . to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted).  Nevertheless, proceeding *pro se* does not otherwise

6

relieve a litigant from the usual requirements of summary judgment.  See Odom v. Keane, 95

Civ. 9941 (SS), 1997 WL 576088, *3 (S.D.N.Y. Sept. 17, 1997) ("[A] pro se party's 'bald

assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for

summary judgment." (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991))).  As a pro se

litigant, plaintiff was served with notice required by Local Rule 56.2 informing him of the nature

of a summary judgment motion and the manner in which it could be opposed.  (Docket # 16.)

Mere "conclusory statements, conjecture, or speculation by the party resisting the motion will

not defeat summary judgment."  Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996)

(citing Matsushita, 475 U.S. at 587); see also Anderson, 477 U.S. at 249-50 (summary judgment

may be granted if the evidence is "merely colorable" or "not significantly probative").  An

"opposing party's facts must be material and of a substantial nature, not fanciful, frivolous,

gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely

suspicions."  Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 n. 14 (2d Cir.

1981) (internal quotation marks omitted).

    II.    Enforceability of American Airlines' Baggage Liability Limitations

        Federal common law governs an air carrier's liability for lost or damaged goods.

See, e.g., Nippon Fire & Marine Ins. Co., Ltd. v. Skyway, 235 F.3d 53, 59 (2d Cir. 2000)

(finding that "federal common law continues to control the issue of liability of air carriers or lost

or damaged shipments even after deregulation"); Gluckman v. Am. Airlines, Inc., 844 F.Supp.

151, 160 (S.D.N.Y. 1994); Wells v. Am. Airlines, Inc., 88 Civ. 5729 (DNE), 1991 WL 79396, *3

(S.D.N.Y. May 9, 1991); Feature Enters., Inc. v. Cont'l Airlines, 745 F.Supp. 198, 199

(S.D.N.Y. 1990); Bary v. Delta Airlines, 02 Civ. 5202 (DGT), 2009 WL 3260499, *12

(E.D.N.Y. Oct. 9, 2009).  Under the federal common law of common carriers, "contractual

provisions that purport to relieve carriers from liability for loss or damage to cargo altogether are invalid and unenforceable as against public policy." Nippon, 235 F.3d at 59 (citing Adams Express Co. v. Croninger, 226 U.S. 491, 509 (1913) and Shippers Nat'l Freight Claim Council, Inc. v. ICC, 712 F.2d 740, 746 (2d Cir. 1983)); see Santa Fe, P. & P. R. Co. v. Grant Bros. Const. Co., 228 U.S. 177, 184 (1913) ("It is the established doctrine of this court that common carriers cannot secure immunity from liability for their negligence by any sort of stipulation."); Hart v. Pa. R. Co., 112 U.S. 331, 338 (1884) ("It is a law of this court that a common carrier may, by special contract, limit his common-law liability; but that he cannot stipulate for exemption from the consequences of his own negligence or that of his servants."); see also First Pa. Bank, N.A. v. E. Airlines, 731 F.2d 1113, 1116 (3d Cir. 1984) ("Under the common law of common carriers as applied by federal and state courts, it was generally held that public policy forbade contracts of carriage where the carrier sought to exculpate itself from liability for its own negligence."). In contrast, provisions limiting the dollar amount of an air carrier's liability, including those limiting the amount of a carrier's liability for negligence, are ordinarily valid and enforceable if the air carrier provides the passenger with adequate notice of the limitation. See e.g., Nippon, 235 F.3d at 59-60; Deiro v. Am. Airlines, 816 F.2d 1360, 1365 (9th Cir. 1987); First Pa. Bank, 731 F.2d at 1116; Bary, 2009 WL 3260499 at *13.

  The federal regulation of air carriers pursuant to the Civil Aeronautics Act of 1938 ("CAA") and its successor, the Federal Aviation Act of 1959 ("FAA"), as well as the subsequent deregulation of air carriers pursuant to the Airline Deregulation Act of 1978 has not altered the applicability or substantive content of federal common law principles. See Nippon, 235 F.3d at 59 (finding that "federal common law continues to control the issue of liability of air carriers or lost or damaged shipments even after deregulation"); see also Sam L. Majors Jewelers

8

v. ABX, Inc., 117 F.3d 922, 927, 929-30 (5th Cir. 1997); Deiro, 816 F.2d at 1365; First Pa.

Bank, 731 F.2d at 1117, 1117 n.5; Klicker v. Northwest Airlines, Inc., 563 F.2d 1310, 1313-14

(9th Cir. 1977); but see Lichten v. E. Airlines, 189 F.2d 939, 941 (2d Cir. 1951).[1]  The Supreme

Court has recognized that "[i]t is a well-established principle of statutory construction that [t]he

[federal] common law . . . ought not to be deemed to be repealed, unless language of a statute be

clear and explicit for this purposes."  Norfolk Redev. & Hous. Auth. v. Chesapeake & Potomac

Tel. Co., 464 U.S. 30, 35 (1983) (internal quotation marks omitted).  Additionally, "any terms of

the statute explicitly preserving or preempting judge-made law are of course controlling . . . ."

Matter of Oswego Barge Corp. 664 F.2d 327, 339 (2d Cir. 1981); see Sam L. Majors Jewelers,

117 F.3d at 928 ("When Congress has expressly preserved a remedy arising under federal

common law our mandate is even more clear, and only by continuing to recognize the cause of

action may we effectuate congressional intent.").

> The CAA and its successor, the FAA, established broad regulatory schemes and

contained savings clauses that expressly preserved remedies existing at common law.  See Sam

L. Majors Jewelers, 117 F.3d at 927 n.9, 927 n.10; First Pa. Bank, 731 F.2d at 1117, 1117 n.5;

---

[1] The majority in Lichten held that under the regulatory scheme established by the CAA the district court was
without jurisdiction to grant relief for the loss of jewelry contained in baggage checked with Eastern Airlines where
an Eastern Airlines' tariff filed with the Civil Aeronautics Board ("CAB") exculpated the air carrier from all liability
from loss of certain categories of items, including jewelry. Id. at 941. The majority's decision rested on two
grounds. First, the majority reasoned that the CAA authorized the CAB to validate a tariff exempting an air carrier
from all liability because the Act did not contain a provision, similar to the Carmack Amendment to the Interstate
Commerce Act, that expressly prohibited exemption from liability for any loss or damage to baggage caused by the
carrier. Id. Second, the majority reasoned that in passing the CAA, Congress intended that a single agency, rather
than the courts, have primary responsibility for supervising uniformity of air carrier services therefore the
reasonableness of a tariff exempting liability must first be decided by the CAB. Id. Judge Jerome Frank dissented.
Among other things, Judge Frank argued that despite the lack of statutory language expressly prohibiting exemption
from liability, under federal common law, the CAB is without power to legalize such a provision. Id. at 943-44.
"[I]t is inconceivable that Congress intended, merely by remaining silent, to authorize the [CAB] to adopt a policy
flatly at odds with the hitherto uniform Federal policy, frequently announced by the Supreme Court in decisions
involving all sorts of transportation, and ultimately expressed by Congress in statutes governing carriers by rail,
water carriers and motor carriers." Id. at 944. Both the Ninth Circuit in Klicker v. Northwest Airlines, Inc., 563
F.2d 1310, 1313-14 (9th Cir. 1977) and the Third Circuit in First Pa. Bank, N.A., v. Eastern Airlines, Inc., 731 F.2d
1113, 1117, 1117 n.5 (3d Cir. 1984) have declined to follow Lichten. Moreover, the Second Circuit in Nippon has
since held that "federal common law continues to control the issue of liability of air carriers or lost or damaged
shipments even after deregulation." 235 F.3d at 59.

Deiro, 816 F.2d at 1365; Klicker, 563 F.2d at 1313-14.[2]  Similarly, the Airline Deregulation Act,

which deregulated most aspects of domestic air transportation, also contains a savings clause

preserving common law remedies: "A remedy under this part is in addition to any other remedies

provided by law."  49 U.S.C.A. § 40120(c); see Nippon, 235 F.3d at 59 (finding that "federal

common law continues to control the issue of liability of air carriers for lost or damaged

shipments even after deregulation"); First Pa. Bank, 731 F.2d at 1122 (finding that after

deregulation the resolution of claims for lost goods against air carriers "became a purely judicial

question for determination by application of the federal common law patterned upon the policy

of the Carmack amendment," which provides that a common carrier may not exempt itself from

liability for loss, damage or injury to goods resulting from its own negligence); Deiro, 816 F.2d

at 1365 ("[T]he subsequent deregulation of air carriers in 1978 did not change the applicability

or substantive content of the relevant federal common law.").

      A.     American Airlines Cannot Exculpate
                Itself from All Liability for Certain Items

---

[2] The significance of the June 1938 CAA's savings clause as it relates to federal common law is not immediately apparent in light of the Supreme Court's decision in Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) holding that there is "no federal general common law." Erie was decided two months prior to the enactment of the CAA. Notwithstanding Erie, the Supreme Court has "recognized the need and authority in some limited areas to formulate what has come to be known as 'federal common law.'" Texas Indus. Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 640 (1981) (citing U.S. v. Standard Oil Co., 332 U.S. 301, 308 (1947)). The few instances in which the Supreme Court has recognized federal common law "fall into essentially two categories: those in which a federal rule of decision is 'necessary to protect uniquely federal interests,' . . . and those in which Congress has given the courts the power to develop substantive law." Id. (citing Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 426 (1964) and Wheeldin v. Wheeler, 373 U.S. 647, 651-51 (1963)). Circuit Judge Frank in dissent in Lichten noted that "it is possible . . . that the Erie-Tompkins doctrine does not apply to cases involving tariffs filed with the Board under the Civil Aeronautics Act, on the theory that Congress, when it enacted that legislation, may be deemed to have intended that uniform rules should govern interstate air carriage." 189 F.2d at 941 (Frank J., dissenting). Moreover, when the CAA's savings provision is "considered against the historical backdrop of federal law – both common law and statutory law – which asserted complete control over similar claims arising out of interstate ground transportation," it is "arguable – perhaps probable – that a federal common law cause of action, narrowly confined to claims [against air carriers for lost or damaged goods] was preserved by the Civil Aeronautic Act's savings provision." Sam L. Majors Jewelers, 117 F.3d at 927. Nevertheless, whether federal common law was preserved by the CAA is not dispositive here as a period of federal common law thereafter developed and was saved by subsequent acts of Congress. See id.

American Airlines 2008 Conditions of Carriage contains a provision disclaiming liability for the loss of or damage to certain items contained within checked baggage. (AA 2008 Conditions of Carriage at 3, attached at Def. Reply Br., Ex. 1.) Included among the items that American does not accept responsibility for in or as checked baggage are "photographic, video and optical equipment" and "unique or irreplaceable items." (Id.) American argues that the tapes and DVDs of plaintiff's travels are "photographic, video and optical equipment," or, alternatively, are "unique or irreplaceable items" and that Sri Lankan Royal Costumes are "unique and irreplaceable items." The Court agrees that the DVDs and tapes chronicling plaintiff's individual travel experiences and the "custom tailored" intricately-crafted Sri Lankan Royal Costumes are "unique or irreplaceable items." Nevertheless, as discussed above, American Airlines' provision disclaiming liability for, among other things, "unique and irreplaceable" items, is an exculpatory provision that, pursuant to a long line of federal common law decisions, is unenforceable. See e.g., Santa Fe, P. & P. R. Co., 228 U.S. at 184; Nippon, 235 F.3d at 59; First Pa. Bank, 731 F.2d at 1116.

Despite this well-established federal common law, the Fifth Circuit in Sam L. Majors Jewelers held that an air carrier was not liable for the loss of jewelry because the air carrier effectively limited its liability by including in its standard airbill provisions purporting to exculpate the air carrier for lost jewelry. 117 F.3d at 929-930. The Fifth Circuit treated the exculpatory provision as a liability limiting provision and reasoned that "[c]arriers are allowed to limit their liability in the contract of carriage . . . if the liability limiting provisions were sufficiently plain and conspicuous to give reasonable notice of their meaning." Id. at 930. Similarly, in Casas v. American Airlines, the Fifth Circuit, relying on Sam L. Majors Jewelers, held that the provision in American Airlines' Contract of Carriage disclaiming liability for

11

plaintiff's camera equipment was not an exculpatory provision but was more akin to a provision limiting the amount of liability and thus was valid if the passenger had notice of the limitation. 304 F.3d 517, 524 (5th Cir. 2002); see also Malik v. Cont'l Airlines, Inc., 369 Fed.Appx. 588, 589 (5th Cir. 2010) (per curiam) (applying Casas to enforce airline's provisions excluding liability for loss of jewelry contained in checked baggage). With due respect, this Court declines to follow the Fifth Circuit rule. When an air carrier contracts to relieve itself of responsibility for loss or damage to certain items, the air carrier is disclaiming all liability for these items. Unlike a provision limiting the amount of a carrier's liability, a provision carving out certain items from liability forecloses all liability on the part of the carrier for its own negligence, something a carrier may not do under federal common law.

Accordingly, American Airlines' motion for summary judgment dismissing the Complaint is denied.

B.   Enforceability of American Airline's Liability Limiting Provisions

While the common law of common carriers precludes an air carrier from disclaiming liability for loss of or damage to baggage, an air carrier may limit the amount of its liability for loss of or damage to baggage. See First Pa. Bank, 731 F.2d at 1116. Moreover, regulations adopted pursuant to the Airline Deregulation Act authorize limitations of liability for the carriage of baggage in domestic air transportation. See 14 C.F.R. § 254.4 ("[A]n air carrier shall not limit its liability or provable direct or consequential damages resulting from the disappearance of, damage to, or delay in delivery of a passenger's personal property, including baggage, in its custody to an amount less than $3,300 for each passenger."). Provisions limiting the amount of a carrier's potential liability "are valid and binding on passengers as part of the contract of carriage where . . . the passenger receives notice thereof either on or with the

12

passenger's ticket." <u>Wells</u>, 1991 WL 79396 at *4; <u>see</u> <u>Bary</u>, 2009 WL 3260499 at *13; <u>Deiro</u>, 816 F.2d at 1363-64.

       Prior to airline deregulation, every air carrier was required to file tariffs with the CAB setting forth, among other things, "all classifications, rules, regulations, practices, and services in connection with . . . air transportation." <u>Bary</u>, 2009 WL 3260499 at *12 (quoting 49 U.S.C. § 1373(a) (1982)). "Tariffs filed with [CAB] if valid, [we]re conclusive and exclusive, and the rights and liabilities between airlines and their passengers are governed thereby." <u>Tishman & Lipp, Inc. v. Delta Air Lines</u>, 413 F.2d 1401, 1403 (2d Cir. 1969). "Thus an air carrier could achieve limited liability by simply filing a valid tariff containing such a provision." <u>Bary</u>, 2009 WL 3260499 at *12. Beginning on January 1, 1983, air carriers were no longer required to file tariffs for domestic air transportation with the CAB. <u>See</u> <u>Bary</u>, 2009 WL 3260499 at *13. "Thus, there was no longer a presumption that passengers have constructive notice of the provisions in a domestic air carrier's tariff[,]" including the liability limiting provisions. <u>Id.</u>

       Today, an air carrier may limit its liability for lost baggage by providing a passenger with adequate notice of the limitation. <u>See</u> <u>Wells</u>, 1991 WL 79396 at *4; <u>see also</u> <u>Bary</u>, 2009 WL 3260499 at *13; <u>Deiro</u>, 816 F.2d at 1364. "The issue of adequate notice of the terms and conditions contained in a passenger ticket for interstate transportation is a question of law to be determined by the Court." <u>Gluckman</u>, 844 F.Supp. at 160-61 (citing <u>Deiro</u>, 816 F.2d at 1364). To determine whether a passenger has been provided with adequate notice, several courts have applied the "reasonable communicativeness" test. <u>See</u> <u>e.g.</u>, <u>Gluckman</u>, 844 F.Supp. at 161; <u>Wells</u>, 1991 WL 79396 at *4; <u>Harger v. Spirit Airlines</u>, 01 Civ. 8606 (Lefkow), 2003 WL 21218968, *5-6 (N.D.Ill May 22, 2003); <u>Deiro</u>, 816 F.2d at 1363-66; <u>Casas</u>, 304 F.3d at 524;

Ward v. Cross Sound Ferry, 273 F.3d 520, 524 (2d Cir. 2001) (expressly adopting the two-part reasonable communicativeness test to determine the enforceability of contractual limitations imposed by a sea carrier); Silvestri v. Italia Societa Per Azioni Di Navigazione, 388 F.2d 11, 17 (2d Cir. 1968) (stating, in an opinion written by Judge Friendly, that a contractual limitation appearing on a passenger ticket would not be enforceable unless the sea carrier satisfied its burden of showing that it "had done all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights").

    To determine "reasonable communicativeness," courts employ a two-pronged test.  First, the court will assess "whether the physical characteristics of the ticket itself 'reasonably communicate to the passenger the existence therein of important terms and conditions' that affected the passenger's legal rights." Ward, 273 F.3d at 523 (quoting Shankles v. Costa Armatori, S.P.A., 722 F.2d 861, 864-66 (1st Cir. 1983)).  In analyzing the ticket, the court will look at the "'size of type, conspicuousness and clarity of notice on the face of the ticket, and the ease with which a passenger can read the provision in question.'" Gluckman, 844 F.Supp. at 161 (quoting Deiro, 816 F.2d at 1364).  Second, the court will examine "whether 'the circumstances surrounding the passenger's purchase and subsequent retention of the ticket/contract' permitted the passenger 'to become meaningfully informed of the contractual terms at stake.'" Ward, 273 F.3d at 523 (quoting Shankles, 722 F.2d at 864-66).  The surrounding circumstances to be considered include the "'passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice that the passenger received outside of the ticket.'" Gluckman, 844 F.Supp. at 161 (quoting Deiro, 816 F.2d at 1364).

Other courts, in factually similar situations, have applied what is called the "released valuation doctrine." See e.g., Nippon, 235 F.3d at 59-60; Feature Enter., 745 F.Supp. at 200; First Pa. Bank, 731 F.2d at 1116; Deiro, 816 F.2d at 1365-66; Klicker, 563 F.2d at 1315; but see Gluckman, 844 F.Supp. 161 n.5 (noting that the released valuation doctrine only applies to claims relating to freight or cargo and not to claims relating to passenger baggage); Wells, 1991 WL 79396 at *4 (finding that "a distinction must be drawn between airline baggage claims and claims relating to freight or cargo" in applying the released valuation doctrine, specifically that the doctrine only applies in actions involving the latter).

Under the released valuation doctrine an air carrier may limit its liability for loss, injury or destruction of baggage when: "(1) the carrier gives the shipper a fair opportunity to pay a higher price for greater coverage and does not choose to pay for higher coverage; and (2) the shipper is on notice of the opportunity to pay a higher price for greater coverage and does not choose to pay for higher coverage; and (3) the carrier does not appropriate the property of the shipper for its own use." Gluckman, 844 F.Supp. at 161 n.5; see Feature Enters., 745 F.Supp. at 200; Deiro, 816 F.2d at 1365 ("The carrier can lawfully limit recovery to an amount less than the actual loss sustained only if it grants its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge."). Courts disagree as to whether the released valuation doctrine applies to claims for the value of passenger baggage. Compare Feature Enters., 745 F.Supp. at 200 (applying the released valuation doctrine to determine whether defendant provide notice of its baggage limitation provisions) to Wells, 1991 WL 79396 at *4 (drawing a distinction between claims relating to freight and cargo to which the released valuation doctrine applies and claims relating to airline passenger baggage to which the released valuation doctrine does not apply). Here, it is not necessary to decide which test applies

15

because the outcome is the same.  While the reasonable communicativeness test and the released

valuation test are two distinct legal inquiries, "the analysis under the released valuation doctrine

can overlap with that of the reasonable communicativeness test."  <u>Deiro</u>, 816 F.2d at 1365 n.4.

"What is deemed reasonable notice under the reasonable communicativeness test is likely to also

constitute reasonable notice under the released valuation doctrine."  <u>Bary</u>, 2009 WL 3260499 at

*14 n.22.

   In its initial submissions in support of summary judgment, American Airlines

addressed the exculpatory provisions in its Contract of Carriage but not the provisions limiting

the monetary amount of its liability.  By Order of this Court dated December 30, 2010, I invited

the parties to submit additional evidence and argument on whether plaintiff was given adequate

notice of the baggage limitation of liability provisions.  (Docket # 38.)[3]  Having reviewed the

additional submissions, summary judgment on a monetary limit of liability must be denied on the

present record.

   Defendants submitted an affirmation of Ms. Goss which speaks to Conditions of

Carriage that were in effect at a given time.  Attached to the affirmation is a copy of the back of

the "Passenger Ticket and Baggage Check" utilized by American Airlines in May 2008 and a

copy of the ticket jacket utilized by American Airlines in May 2008.  (Goss Aff'm ¶¶ 4-5 and

Exs. A & B.)  The back of the "Passenger Ticket and Baggage Check" – unlike the ticket jacket

that will be discussed below – refers to American Airlines' Conditions of Carriage but does not

provide its terms or conditions.  No baggage liability limitations are set forth, but the passenger

is directed to a website and to the ticket jacket for the Conditions of Carriage.  The language,

insofar as potentially relevant, reads as follows:

---

[3] Rule 56(f), Fed. R. Civ. P., provides that "[a]fter giving notice and a reasonable time to respond, the court may: . . . (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."

A summary of the Terms and Conditions applicable to your travel on American Airlines and affiliated carriers is available at aa.com or on ticket jackets which are available at the airport. . . .

**Domestic Notice**:  Air Transportation to be provided between points in the U.S. . . . is subject to the individual contract terms (including rules, regulations, tariffs and conditions) of the transporting air carriers, which are herein incorporated by reference and made part of the contract of carriage.  Where this coupon is issued for transportation, or services other than air travel, specific terms and conditions may apply.  These terms and conditions may be included in the ticket set or may be obtained from the issuing company or agent.  Please make sure you have received the important legal notices entitled "Conditions of Contract," "Notice of Incorporated Terms," "Notice of Baggage Liability Limitations," and "Notice of Overbooking" or the specific terms and conditions relating to non-air transportation or services.  If not, contact the nearest office of the company or agent to obtain copies.

(Back of "Passenger Ticket and Baggage Check," attached at Goss Aff'm, Ex. A.)

The ticket jacket utilized in May 2008 does, indeed, notify the passenger of the limitation on the carrier's liability for lost baggage.  Under the heading "Notice of Baggage Liability Limitations," the ticket jacket reads as follows:

**General**:  Carrier assumes no liability for . . . (d) loss or damage to (i) baggage carried in the passenger cabin; (ii) photographic equipment, computers and any other electronic equipment, jewelry, cash, documents, works of art or other similar valuable items . . . .  Carry valuable items such as electronic equipment, cameras, cash and jewelry, as well as necessary items such as medication, prescriptions and keys, with you on board the aircraft.

**Domestic**:  For travel wholly within the U.S., Puerto Rico and the U.S. Virgin Island, federal rules require any limit on an airline's baggage liability to be at least $2,800 per passenger, and carrier's liability is limited to $2,800 per ticketed passenger.

(Passenger Ticket Jacket, attached at Goss Aff'm, Ex. B.)  The portion of the ticket jacket discussing the specific monetary limitations on baggage liability are typed, similar to the writing

17

on the rest of the ticket jacket, in dark font on a light background.  The monetary provisions,

however, appear in approximately 8 point type, a font smaller than that utilized on the rest of the

ticket jacket, approximately 10 point type.

   Additionally, the ticket jacket provides passengers with a "Notice of Incorporated

Terms of Contract," which states:

> Air transportation, whether it is domestic or international
> (including domestic portions of international journeys), is subject
> to the individual terms of the transporting air carriers, which are
> herein incorporated by reference and made part of the contract of
> carriage . . . . Incorporated terms may include, but are not restricted
> to: . . . (2) Rules and limits on liability for baggage, including
> fragile or perishable goods, and availability of excess valuation
> charges . . . .

(Passenger Ticket Jacket, attached at Goss Aff'm, Ex. B.)

   Ms. Goss states as a general matter that "[t]he 'Passenger Ticket and Baggage

Check' is put into a ticket jacket by American Airlines personnel at the airport." (Goss Aff'm ¶

5.)  However, I cannot tell from the submissions of the parties when and where plaintiff

purchased his ticket and whether the means he utilized would have provided him a ticket jacket.

Plaintiff states in his affidavit, submitted in response to my December 30, 2010 Order that he

"traveled on an E-ticket, (only # FVSLCN) and [] never received a ticket jacket from AA

Agent." (Demel Aff. p. 1.)  Does an on-line purchaser receive a ticket jacket, even if not

requested?  If truthful, Ms. Goss could have sworn that it was the routine practice of the airline at

the relevant time to prohibit a passenger from boarding without a ticket jacket.  <u>See</u> Rule 406,

Fed. R. Evid.  She did not.

   I also note that Ms. Goss annexes a ticket jacket purportedly in use in May 2008

that contains a limit of liability flatly at odds with the governing regulation and American

Airlines' website.  As noted the regulation in effect at the time permitted a limit of $3,000, not

$2,800.  See 14 C.F.R. § 254.4 (effective 2008) ("An air carrier shall not limit its liability or

provable direct or consequential damages resulting from the disappearance of, damage to, or

delay in delivery of a passenger's personal property, including baggage, in its custody to an

amount less than $3,000 for each passenger.").  Indeed, the defendants assert that the Conditions

of Carriage on American Airlines' website refers to the $3,000 figure.  Yet, defendants have

blithely submitted the ticket jacket with the $2,800 limitation without the slightest reference to

the discrepancy or why it does not cast doubt on the affirmation.

> Ms. Goss also states that the Conditions of Carriage were available on a website.

It is not sufficient for American Airlines to establish that plaintiff could have learned of the

airline's liability limitations by asking for a ticket jacket or accessing a website.  "*Caveat

Emptor*" does not apply to passengers travelling on a common carrier.  To the extent that

defendants are relying on a monetary limitation of liability, it is their burden to show that

plaintiff had adequate notice of the monetary limitation.

> Plaintiff has not fared much better.  Despite his apparent sophistication and the

notice he received, under Local Rule 56.2., he has made factual assertions in letters and Local

Rule 56.1 statements that are not supported by admissible testimony – an affidavit or declaration.

CONCLUSION

> For the reasons set forth above, defendants' motion for summary judgment is

DENIED.

> SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       February 10, 2011

19